IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LAWRENCE G. WOJCIK,                    §
                                        §
                       Plaintiff,       §
                                        §   Civil Action No. 3:13-CV-2314-D
VS.                                     §
                                        §
COSTCO WHOLESALE CORP.,                 §
                                        §
                       Defendant.       §

MEMORANDUM OPINION
AND ORDER

        In this suit arising from the plaintiff's termination as the Meat Department Manager

of one of the defendant's stores, the difference in causation standards between the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., and the

Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. § 21.001 *et

seq*. (West 2015), warrants dismissing the plaintiff's age discrimination claim under the

ADEA but not under the TCHRA.  The court also concludes that the plaintiff's retaliation

claim under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.,

must be dismissed.  The court therefore grants in part and denies in part the defendant's

summary judgment motion.

I

        This is an action by plaintiff Lawrence G. Wojcik ("Wojcik") against defendant

Costco Wholesale Corporation ("Costco"), alleging claims under the ADEA, the FMLA, and

the TCHRA.[1]  Wojcik began working for Costco as a meat cutter in 1988.[2]  A few years later, Costco promoted him to the position of Meat Department Manager, which he held for the next 20 years.  In 2012 Wojcik was terminated at the age of 60.

In the fall of 2011, Wojcik transferred to a new Costco store in Frisco, Texas ("Frisco Store").  The Frisco Store was overseen by Warehouse Manager Nak-he Evans ("Evans"), who was in her late 30s.  According to Wojcik, Evans made several age-related comments to him.  For example, on one occasion, while Wojcik and his employees were still cleaning the counters at 10:00 p.m., Evans told Wojcik that he was "supposed to be done at 9:45," and said, "If you weren't so old, you could move a little faster."  D. App. 12.  On two occasions, when Wojcik tried to hire older people to work in the Meat Department, Evans turned them down, commenting on one occasion that the store already had too many old people and that "'there were only so many door positions for you old people.'"  P. Br. 10 (quoting D. App. 31, 38).

According to Costco, from June 2008 until mid-2011, its Regional Vice President, Richard Webb ("Webb"), encountered numerous problems with Meat Managers in Costco's

_____

[1]The TCHRA is now known as Chapter 21 of the Texas Labor Code.  *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 437 (5th Cir. 2012).  For convenience, the court will refer to Wojcik's claim as his TCHRA claim.

[2]In recounting the factual background, the court summarizes the evidence in the light most favorable to Wojcik as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Texas region.  During this period, he terminated five Meat Managers in Texas for violating Costco policy.   To prevent the problems from recurring, Webb held a special meeting—known as the Integrity Meeting—in August 2011, in which he brought together all of the Meat Managers in Texas for a face-to-face meeting at Costco's regional office in Plano.   During the Integrity Meeting, Webb explained that there had been serious and repeated problems in the Meat Department regarding employees who had not followed policy, particularly sanitation policy.  Webb informed all of the Meat Managers that he would not tolerate any "corner cutting," that integrity was paramount in the department, and that further violations of policy (especially sanitation policy) would result in termination.

Costco uses in the Meat Department a document referred to as the Standard Sanitation Operation Procedures ("SSOP") log.  The SSOP log is used to keep track of several items of information, including when required weekly cleaning duties are performed, who performed them, and whether and to what extent the work passed or failed inspection by the Meat Manager.   The SSOP log contains several rows pertaining to different types of equipment that must be cleaned and inspected.  The log also has two columns, one of which the employee who performs the cleaning work is required to initial after the work is performed, and the other of which the manager who performs the inspection work is required to initial after performing the inspection.  The SSOP log states that it is to be completed "in the evening following cleaning or in the morning prior to production."  D. App. 46.

On Monday, January 23, 2012, Wojcik made sure that the weekly cleaning and sanitizing of the Meat Department was completed.  Later in the week, he noticed that he and

his employees had forgotten to initial the SSOP log, as required.  According to Wojcik, he mentioned to two of his employees, Mark Manskey ("Manskey") and Daniel Rico, that they had failed to sign off on the weekly cleaning on Monday and that this needed to be done. Wojcik then proceeded to assist several customers.  Afterward, he observed that the logs had been initialed, indicating that the cleaning had been performed.  Wojcik maintains that, "as had been his regular practice, he initialed [the log] to verify as inspected since he was fully aware that the cleaning had been properly completed."  P. Br. 11-12.

On January 25, 2012, Eric Ingebretsen ("Ingebretsen"), the Administrative Manager at the Frisco Store, was going through the closing procedures when he noticed that the Meat Department's SSOP log for January 23 had not been completed.  Ingebretsen discovered several days later that the log had been backdated to indicate that it had been completed on January 23.  Ingebretsen reported his findings to Evans, who initiated an investigation.

The January 23 log appeared to have two sets of initials: "MM" in the space for the person who had performed the cleaning/sanitation duties, and "LW" in the space for the person who had observed and inspected the cleaning that "MM" had performed.  On the assumption that "MM" meant Manskey and that "LW" meant Wojcik, Evans separately interviewed them both.  Manskey told Evans that the "MM" initials written on the SSOP log did not appear to be his handwriting, and he stated that he did not believe he had been at work on Monday, January 23.  Evans later confirmed that Manskey had called in sick that day.

According to Costco, when Evans interviewed Wojcik, he continued to maintain that

he and Manskey had performed the cleaning on January 23 and that the "MM" initials were Manskey's. Wojcik admitted, however, that he and Manskey had neglected to initial the SSOP log on January 23, that he had instructed his employees to initial for the work they had done, and that he and Manskey had initialed the SSOP log on Saturday, January 28. Wojcik denies writing any initials other than his own on the log or lying during Evans' investigation. He contends that, when Evans first called him in and questioned him, he was not clear which week was being discussed. Wojcik testified that he and Manskey had worked together for almost three years and had cleaned together on many Mondays, and that he had forgotten, when he told Evans that he and Manskey had cleaned together on Monday, January 23, that Manskey had called in sick that day. Wojcik maintains that he knew the cleaning had been done, and that he had been previously advised that, so long as the work was actually performed, it was okay to initial the SSOP log after the fact.

After Wojcik provided a written statement regarding the incident, Evans spoke again to Manskey. She asked Manskey if Wojcik had asked him to sign the log and backdate it; Manskey responded that this had not happened and that Wojcik never asked him to sign a log for work performed several days earlier. Evans also compared prior SSOP logs to the log in question and concluded that the initials of "MM" on the prior logs were different. She did not take any action at that time, however, because she was scheduled to take her vacation.

After Evans returned, Wojcik requested and was granted 60 days of medical leave under the FMLA. He had been diagnosed with a heart valve leak and advised by his doctor to take a medical leave of absence. Wojcik's FMLA leave began on February 14, 2012.

While Wojcik was on leave, Evans relayed the details of her investigation to her superior, Kim Silva ("Silva"),[3] Costco's Vice President of Operations, who then relayed these details to Webb.  Evans also directly emailed Webb with some additional information regarding the incident.

According to Costco, Webb was aware of the following facts:

> (1) Wojcik admitted to backdating an SSOP log; (2) Wojcik claimed that he also asked an employee to backdate the SSOP log; (3) the SSOP log appeared to be forged by Wojcik because the initialing on the logs did not match up with prior logs; and (4) when asked to explain, Wojcik claimed that he had supervised the cleaning activities of an employee who was actually absent on the day in question.

D. Br. 8.  Based on this conduct, Webb decided to terminate Wojcik.  When Wojcik returned from FMLA leave on March 13, he was suspended for five days and terminated on March 19, 2012.  The reasons given for the termination were "Violation of Manager's Standard of Ethics" and "Falsification of Company Records."  D. App. 54.

After receiving a right to sue letter from the Equal Employment Opportunity Commission, Wojcik filed this suit against Costco, asserting claims under the ADEA, FMLA, and TCHRA.  Costco moves for summary judgment on all of Wojcik's claims. Wojcik opposes the motion.

---

[3]Costco refers to this individual as Kim Brown.

II

Because Wojcik will bear the burden of proof on his claims at trial, Costco can meet its summary judgment obligation by pointing to the absence of admissible evidence to support the claim in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Costco does so, Wojcik must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Wojcik's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Wojcik's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). Summary judgment is mandatory if Wojcik fails to meet this burden. *See Little*, 37 F.3d at 1076.

III

The court will consider together Wojcik's age discrimination claims under the ADEA and the TCHRA. The familiar *McDonnell Douglas*[4] burden-shifting framework applies to both types of claims.[5] And, except for the element of causation, the burdens of production

---

[4]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[5]In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." *Id.* at 175 n.2. The Court relied instead on a textual analysis of the ADEA to resolve the question whether a plaintiff can succeed on a "mixed-motives" claim of age discrimination. Absent Supreme Court authority, the court will follow the Fifth Circuit's post-*Gross* precedent and apply *McDonnell Douglas* to ADEA

and proof are the same for both.

It is unlawful under the ADEA "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  Tex. Labor Code Ann. § 21.051(1) (West 2015) makes it an unlawful employment practice to discharge an individual because of age.

To prove age discrimination, a plaintiff can rely on direct or circumstantial evidence. *See, e.g., Flanner v. Chase Inv. Servs. Corp.*, ___ Fed. Appx. ___, 2015 WL 408602, at *2 (5th Cir. Feb. 2, 2015) (per curiam) ("To establish an age discrimination claim, an employee must prove by a preponderance of the evidence, which may be direct or circumstantial, that age was the 'but for' cause of the employer's adverse decision."); *Reed v. Neopost USA, Inc*., 701 F.3d 434, 439 (5th Cir. 2012) ("Where, as here, a plaintiff relies on circumstantial evidence, Texas courts apply the familiar *McDonnell Douglas* burden-shifting framework to age-discrimination claims under the TCHRA.").

Under both the ADEA and the TCHRA, when a plaintiff relies on circumstantial evidence, the claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *See, e.g., Munoz v. Seton Healthcare, Inc.*, 557 Fed. Appx. 314, 321 (5th Cir. 2014) (per curiam); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). This framework consists of three stages.

First, the employee must establish a prima facie case of discrimination, which "creates a presumption that the employer unlawfully discriminated against [him]." *Tex. Dep't of*

_____

cases. *See, e.g., Chamblee v. Miss. Farm Bureau Fed'n*, 551 Fed. Appx. 757, 759 (5th Cir. 2014) (per curiam) (applying *McDonnell Douglas* framework to ADEA claim).

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).[6]

Second, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action taken against the employee. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). The employer's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (citing *Burdine*, 450 U.S. at 255). If the employer meets this burden, "the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

Third, for an ADEA claim,

> [i]f the employer satisfies this burden, the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age. An employee may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. But a reason cannot be proved to be a pretext *for discrimination* unless it is shown both that the reason was false, and that discrimination was the real reason.

---

[6]Because the prima facie case step is not at issue, the court will not set out the elements of a prima facie case in the context at issue here.

*Flanner*, 2015 WL 408602, at \*2 (footnotes and internal quotation marks omitted).  For a TCHRA-based age discrimination claim, however, the employee can prove "'either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor ("mixed motive").'"  *Reed*, 701 F.3d at 439-40 (quoting *Michael v. City of Dallas*, 314 S.W.3d 687, 691 (Tex. App. 2010, no pet.)).  At the summary judgment stage, of course, the employee need only present sufficient evidence to raise a genuine issue of material fact.  *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at \*6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff's] discharge, in order for [plaintiff] to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination.").

Because the first and second steps of the *McDonnell Douglas* regimen are not at issue, the court will confine its analysis to the third step.  In § IV the court will address whether Wojcik has raised a genuine issue of material fact as to his ADEA claim.  In § V the court will address whether he has met this burden as to his TCHRA-based age discrimination claim.

IV

A

Costco has introduced evidence that Webb decided to terminate Wojcik for the following reasons: Webb reasonably believed that Wojcik had admitted backdating an SSOP

log; Wojcik claimed that he had also asked Manskey to backdate the SSOP log; the SSOP log appeared to be forged by Wojcik because Manskey's initials on the SSOP log did not match Manskey's initials on prior SSOP logs, and Manskey denied initialing the SSOP log in question; and when Evans asked Wojcik to explain, Wojcik claimed that he had monitored the cleaning activities of Manskey on a date when Manskey was actually absent from work, so Wojcik was not being honest with Evans during the investigation.  Costco maintains that Wojcik's actions are all clear violations of Costco policy, and are legitimate, nondiscriminatory reasons for terminating his employment.

Wojcik contends that Costco's proffered reasons for terminating him are pretextual. To establish pretext, Wojcik must show that Costco's "proffered explanation is false or unworthy of credence."  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)) (internal quotation marks omitted).  "If [Wojcik] can successfully 'raise a genuine issue of material fact as to whether he has established pretext, that will suffice to avoid summary judgment.'" *Sullivan v. Worley Catastrophe Servs., L.L.C.*, 591 Fed. Appx. 243, 247 (5th Cir. 2014) (per curiam) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)).

B

Wojcik advances several arguments in an attempt to create a genuine issue of material fact on the issue of pretext.  He first contends that he has produced substantial evidence that he was treated less favorably than younger coworkers.

Although evidence of disparate treatment can create a genuine issue of material fact

regarding pretext, a plaintiff "must show that [the employer] gave preferential treatment to a younger employee under 'nearly identical' circumstances." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002) ("In discrimination cases, [the court] compare[s] the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff." (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001))). "The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'" *Johnson v. Dall. Cnty. Sw. Institute of Forensic Sci. & Med. Examiner Dep't*, 2014 WL 177284, at *5 (N.D. Tex. Jan. 16, 2014) (Fitzwater, C.J.) (quoting *Dotson v. Gulf*, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006)) (some internal quotation marks omitted).

The court concludes that Wojcik has failed to create a genuine issue of material fact regarding pretext on the basis of disparate treatment. Wojcik relies on evidence that five younger management employees were demoted rather than terminated when they violated Costco policies. He alleges that Jerry Doughty ("Doughty"), who was "substantially younger," was demoted to the position of Receiving Manager when he violated the company policy requiring the Assistant Manager to sign off on a deposit only after counting the

deposit to ensure that all of the reported funds were included in the deposit.[7]   When questioned, Doughty admitted that he had not counted the deposit.  In his deposition, Wojcik testified that, when Scott Massey ("Massey"), the Bakery Manager at the West Plano warehouse, was found to have used out-of-code ingredients, he was only demoted.  Wojcik also testified that Chris Montgomery, a 30-year-old manager, was demoted for leaving approximately $20,000 worth of product outside of refrigeration overnight.  And that John Golden ("Golden"), who was in his early 40s and worked at the Lewisville Costco with Wojcik's wife, called Wojcik's wife "old," in violation of Costco's zero tolerance policy for making comments about age, and he was only reprimanded.  Wojcik avers in his declaration that John Cousins ("Cousins"), a Meat Market Manager in the region Webb oversees, and whom Wojcik alleges was "substantially younger,"[8] was found to have extended the dates on frozen seafood, a "major violation" of Costco policies, and was only demoted.  P. App. 109.

Viewing the evidence favorably to Wojcik, the court concludes that none of these five individuals was treated more favorably than Wojcik under "nearly identical" circumstances.

---

[7]Doughty signed off on a deposit without first counting it, and it was later discovered that at least the sum of $10,000 was missing.

[8]In his declaration, Webb avers that, at the time Cousins was demoted for failing to follow Costco policy, he was 57 years old.  Because the court relies on other grounds, it need not address whether, if true, this is evidence of someone who was substantially younger than Wojcik.  *See Flanner*, 2015 WL 408602, at *3 (stating that "to create an inference of age discrimination, at least one of [the plaintiff's] replacements must be *substantially younger* than [the plaintiff]").

- 13 -

First, of the five managers, only two—Doughty and Cousins—were employed in a region overseen by Webb and were accused of falsifying company records.  Doughty, however, did not work in the Meat Department, which Webb had singled out for heightened standards for following policy.  And although Cousins did work in the Meat Department, he was demoted on August 30, 2010, one year *before* Webb convened the Integrity Meeting in which he announced that he would not tolerate any "corner cutting," emphasized the importance of integrity, and explained that further serious infractions would result in termination.

Furthermore, Wojcik has not adduced evidence that either Doughty or Cousins lied to management while being investigated or that there was any reason for Webb to believe they had forged another coworker's signature.[9]  In contrast, Wojcik admits that he told Evans that Manskey had cleaned the Meat Department on January 23, when it was undisputed that Manskey was not at work that day.  And even if Wojcik did not forge Manskey's initials on the SSOP log, there was sufficient evidence for Webb to believe that Wojcik had done so and to terminate his employment on this basis.

Wojcik has failed to raise a genuine issue of material fact based on comparisons to the

---

[9]In fact, Webb testified that the reason Doughty was not terminated, despite the seriousness of his offense, was that

> when we asked him, he openly admitted that he did not count the deposit.  He did not try to say "Oh no, I did, I always do." He came right out and said from the beginning, "No, I went in, I sealed it," and I think honesty in that went a long way.

D. App. 126.

five younger managers in question.

## C

Wojcik contends that it is clear from the evidence that Costco had already decided to terminate his employment on March 9, 2012, so there is no way that any of the information collected on March 13, 2012—when Wojcik was asked to give a more detailed second statement—could have been considered.  Wojcik maintains that the unfair or irregular investigation of misconduct can be evidence of pretext and would permit reasonable jurors to question Costco's credibility.  The court disagrees.

Wojcik does not contend that Costco inadequately investigated the SSOP log issue, and he has not adduced any evidence that would suggest that Costco conducted an "unfair or irregular investigation" of his alleged misconduct.  The evidence on which Wojcik relies shows that, on March 9, 2012, Evans sent an email to Webb and two others, informing them that Mario Padilla, in the Human Resources Department, had stated that suspension with a demotion would be "more than suitable" for Wojcik's violation, but that termination of employment would also be "okay . . . if we have set this precedence in our region."  P. App. 97.  Evans then stated "I will clarify a few investigation questions with [Wojcik] and will suspend for a week."  *Id.*  Webb responded, "Let's prepare to terminate."  *Id.*  A reasonable jury could not find, based on this email exchange, that Costco's investigation of Wojcik's alleged misconduct was "unfair or irregular."  At the time Evans sent the March 9, 2012 email, she had already interviewed Wojcik, received a statement from him, spoken with him after receiving his written statement, interviewed Manskey twice, compared the handwriting

on the January 23 SSOP log with earlier SSOP logs, and verified that Manskey had not been at work on January 23 because he was out sick.  Evans' requesting a second statement, even if she did so after the decision had been made to terminate Wojcik's employment, would not permit a reasonable jury to find that Costco's proffered reasons for terminating Wojcik were pretextual.

### D

Wojcik asserts that it is insufficient that Webb reasonably believed Wojcik had engaged in the conduct attributed to him because, although an employer's decision may be misguided or even erroneous, it cannot be unlawfully motivated.  This argument lacks force. While the court agrees with Wojcik's description of the law regarding employer motivations, the court does not agree that Wojcik has introduced sufficient evidence to create a genuine fact issue that Webb's decision to terminate Wojcik's employment was unlawfully motivated. *See, e.g., Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) ("In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993))).  In fact, Wojcik conceded in his deposition that he did not have any reason to believe that Webb discriminated against him because of his age, and that he thought Webb "want[ed] to try to make an example out of everybody in the Meat Department," making this clear in meetings by stating, "I will terminate anybody anytime, any place."  D. App. 37.

- 16 -

E

Wojcik maintains that, on closer examination, Costco's reason for terminating him is unworthy of belief because the alleged misconduct does not actually violate the clear language of Costco's ethics standards.  Costco's Operations Memorandum and Standard of Ethics (Managers) prohibit manipulating records "to enhance performance." D. App. 43, 44. Wojcik contends that because his department in fact fully satisfied the weekly cleaning requirements, performance was in no way enhanced.  Additionally, Costco refers to the alleged misconduct as "back-dating," but Wojcik maintains that no records were backdated because Wojcik only affixed his initials to confirm that the work that was done on January 23 was actually done.

Neither of these arguments is sufficient to enable a reasonable jury to find that Costco's reason for terminating Wojcik is pretextual.  The Standard of Ethics (Managers) provides, in pertinent part, "[i]n accepting a position of management you must be committed to and demonstrate a role of honesty and forthrightness. . . .  Records (payroll, personnel, inventory, etc.) are never manipulated in an effort to enhance performance or results."  D. App. 44; *see also id.* at 43 (Operations Memorandum providing, in pertinent part, "[i]n accepting a position of management, you must be committed to and demonstrate a role of honesty and forthrightness. . . .  Never manipulate records (payroll, personnel, inventory, etc.) to enhance performance or results.").  The SSOP clearly states that "[l]ogs should be signed off by a Department Manager, Lead, or Staff Level Manager in the evening following cleaning or in the morning prior to production."  *Id.* at 46.  It is undisputed that Wojcik did

- 17 -

not sign the SSOP log in the morning prior to production on Monday, February 23; he signed it instead on Saturday, February 28, initialing the "Monday" column. Wojcik offers his personal belief that his actions did not violate the Standards of Ethics because his signatures in no way "enhanced performance," but he produces no evidence that would enable a reasonable jury to find that Webb, who made the decision to terminate Wojcik, did not reasonably believe Wojcik's actions violated the Standard of Ethics. *See Chamblee v. Miss. Farm Bureau Fed'n*, 551 Fed. Appx. 757, 760 (per curiam) ("[O]ur analysis of whether an alleged violation of an employer's policy is a pretext for discrimination does not turn on whether the employee in fact violated the policy, but rather whether the employer reasonably believed the employee violated the policy and acted based on that belief." (citing *Waggoner*, 987 F.2d at 1165)); *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) ("The inquiry is not whether Calip actually committed the alleged infraction, but whether YTI believed that he had and based its decision to discharge him on that belief" (citation omitted)). Accordingly, Wojcik's arguments about why he does not believe he violated the Standard of Ethics are insufficient to enable a reasonable jury to find pretext.

F

Wojcik contends that Costco has sought to justify its discriminatory conduct by giving Wojcik a poor (and wholly unwarranted) performance criticism despite suggesting that performance did not play a part in its termination decision. He posits that this "suggests that Costco tacitly acknowledges that the alleged infractions asserted as the 'non-discriminatory

- 18 -

reasons' are not true and/or are insufficient to support the termination of such a long term and successful employee." P. Br. 25. This argument is unavailing. Wojcik cites no evidence that Costco ever justified its termination of his employment based on poor performance. Instead, at the time of his termination and during this litigation, Costco has consistently maintained that it terminated Wojcik based on his "Violation of Manager's Standard of Ethics" and "Falsification of Company Records." D. App. 54.

G

Finally, Wojcik relies on age-related comments made by Evans and Silva to establish pretext under a "cat's paw" theory.[10]

Under the "cat's paw" theory, "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the "cat's paw," for the subordinate employee's prejudice.'" *Laxton*, 333 F.3d at 584 (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). "To invoke the cat's paw analysis, [plaintiff] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decisionmaker.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell*, 235 F.3d at 227).

---

[10]In *Holliday v. Commonwealth Brands, Inc.*, 483 Fed. Appx. 917 (5th Cir. 2012) (per curiam), the Fifth Circuit noted that, "[a]lthough we have recognized this 'cat's paw' theory of liability under the ADEA, it is entirely unclear whether our decisions remain good law in the wake of [*Gross*, 557 U.S. 167], and *Staub v. Proctor Hospital*, [562 U.S. 411] (2011)." *Id.* at 922 n.2. Because the court is granting Costco's motion for summary judgment on Wojcik's ADEA claim, it will assume *arguendo* that the "cat's paw" theory is viable.

As to the first element, Wojcik has produced evidence that, during the three to four months prior to the SSOP log incident, Evans refused to hire a 55-year-old applicant in the Meat Department, telling Wojcik that the applicant was "a little old for what we need," D. App. 32; Evans commented that Wojcik was "supposed to be done at 9:45," and said, "If you weren't so old, you could move a little faster," *id.* at 12; and, when Wojcik tried to hire a 50-year-old applicant, Evans turned him down, commenting that the applicant was too old, she did not need any more old people, she had enough old people already, and "I only have so many door positions available for you old people," *id.* at 31, 38.[11]   Regarding the second element, Wojcik has adduced evidence that Webb decided to terminate him based on information reported to him by Silva and Evans, and that Webb did not make any independent investigation.[12]   This evidence is sufficient to enable Wojcik—to the extent based on Evans' conduct[13]—to rely on the cat's paw theory.[14]

_____

[11]Wojcik testified that Evans instead hired a much younger candidate and told Wojcik she had done so because he is "25 years younger [than the older applicant], loves me, and will do anything for me."  D. App. 31 (alteration in original).

[12]Webb testified at his deposition that, when Silva told him that Wojcik had "falsified an SSOP document," he "had her do all of the investigation," telling her to "[g]et to the bottom of it, let me know, and then cover it with our HR department and get back with me." D. App. 114.

[13]Wojcik testified that Silva told him during his suspension that she found it hard to believe that the Meat Department could be cleaned in one day, and she started to say something about "older workers" but stopped herself.  D. App. 33.  A reasonable jury could not find, based on this evidence alone or in combination with other proof in the record, that Silva exhibited discriminatory animus.

[14]Costco contends that, because Evans interviewed and hired Wojcik for the Meat Manager position at the Frisco Store, it is entitled to the "same-actor inference," which

But the conclusion that the cat's paw theory is available to Wojcik is not alone sufficient to enable him to withstand summary judgment on his ADEA claim.  Wojcik is relying on Evans' comments as circumstantial evidence of pretext.[15]  Even under the more

---

supports a presumption that Wojcik's termination was not discriminatory.  Costco argues that Evans' comments are not "sufficiently egregious facts" to overcome the presumption.  The court declines to grant summary judgment on this basis.

When "the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created."  *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 n.3 (5th Cir. 1997) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)).  "The inference is not unassailable, however, and a plaintiff may overcome it by presenting evidence of 'sufficiently egregious' facts."  *Curry v. Telect, Inc.*, 2009 WL 1659344, at *4 (N.D. Tex. June 15, 2009) (Fitzwater, C.J.) (quoting *Brown*, 82 F.3d at 658).  Wojcik has produced sufficient evidence to overcome the same-actor inference.

[15]Wojcik does not contend that Evans' comments constitute direct evidence of pretext and states that he is only relying on circumstantial evidence to establish age discrimination.  In *Reed* the Fifth Circuit explained:

> In evaluating federal discrimination claims, this court has distinguished between workplace comments presented as direct evidence of discrimination and those presented as additional (*i.e.*, circumstantial) evidence in the course of a *McDonnell Douglas* analysis.  Where a plaintiff offers remarks as direct evidence, we apply a four-part test to determine whether they are sufficient to overcome summary judgment.  *See Brown*[, 82 F.3d at 655] (holding that "[r]emarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."); *see also Laxton*[, 333 F.3d at 583 n.4] (noting that, in light of the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the *CSC Logic* test applies only when a remark is presented as direct evidence of discrimination).  Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, however, we apply a more flexible two-part test.

lenient *Russell* test for workplace comments, remarks are not probative of discriminatory intent if there is no other evidence of pretext. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) ("After *Reeves*, . . . so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent."); *see also Reed*, 701 F.3d at 441 ("Where a plaintiff offers remarks as circumstantial evidence *alongside other alleged discriminatory conduct*, . . . we apply a more flexible two-part test." (emphasis added) (citations omitted) (addressing TCHRA claim); *Bugos v. Ricoh Corp.*, 2008 WL 3876548, at *6 (5th Cir. Aug. 21, 2008) (per curiam) (unpublished opinion) ("Because Brown's workplace comments are the only circumstantial evidence of pretext, and, standing alone, they are not probative, we affirm the district court's grant of summary judgment"); *Paulissen v. MEI Techs., Inc.*, 942 F.Supp.2d 658, 671 (S.D. Tex. 2013) ("[E]ven under th[e] relaxed standard [articulated in *Russell*], age-related remarks cannot be the only evidence of pretext."). Because Wojcik has failed to adduce any evidence of pretext other than Evans'

---

*Russell*[, 235 F.3d at 226]. In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *See Laxton*, 333 F.3d at 583 (citing *Russell*, 235 F.3d at 226).

*Reed*, 701 F.3d at 441 (some alterations added). Even if Wojcik had offered Evans' comments as *direct* evidence of discrimination, Wojcik would be unable to satisfy the fourth element of the *CSC Logic* test. Evans' comments that Wojcik was moving slowly and that she did not want to hire any more "old people" in the Meat Department are not related to the employment decision at issue, i.e. Wojcik's termination.

- 22 -

age-related comments, he cannot defeat summary judgment on his ADEA claim by relying on this evidence alone.

H

In sum, Wojcik has failed to present evidence that would enable a reasonable jury to find that Costco's legitimate, nondiscriminatory reasons for terminating his employment are pretextual.   Costco has introduced evidence that Webb decided to terminate Wojcik's employment based on the following: he reasonably believed that Wojcik had admitted backdating an SSOP log; that Wojcik had admitted that he had also asked Manskey to backdate the SSOP log; that the SSOP log appeared to be forged because Manskey's initials on the SSOP log did not match Manskey's initialing on prior SSOP logs, and Manskey denied initialing the SSOP log in question; and that when Evans asked Wojcik to explain, Wojcik claimed that he had monitored the cleaning activities of Manskey, but Manskey was actually absent on the day in question, so Wojcik was not being honest with Evans during the investigation.   Wojcik's evidence of Evans' age-based comments, even if imputed to Webb under a "cat's paw" theory, are alone insufficient to create a genuine fact issue regarding pretext.   The court therefore holds that Wojcik has failed to adduce evidence that would enable a reasonable jury to find that Costco's legitimate, nondiscriminatory reasons for terminating his employment are pretextual.   Costco's motion for summary judgment is granted, and Wojcik's discrimination claim under the ADEA is dismissed.

- 23 -

V

The court now turns to Wojcik's TCHRA-based age discrimination claim.

Wojcik can defeat summary judgment dismissing his TCHRA claim by presenting evidence that would enable a reasonable jury to find that Costco's reasons for terminating him, while true, were only some of the reasons for its conduct, and that discrimination was another motivating factor, i.e., that Costco acted with mixed motives.  *See Reed*, 701 F.3d at 440.[16]  The court has concluded above that a reasonable jury could attribute Evans' discriminatory animus to Costco under a "cat's paw" theory.  *See supra* § IV(G).  Viewing the evidence in the light most favorable to Wojcik and drawing all reasonable inferences in his favor, a reasonable jury could find that, although the decision to terminate him was motivated, in part, based on the reasonable belief that Wojcik had violated company policy, another motivating factor was Wojcik's age.[17]  Wojcik has adduced evidence that Evans

---

[16]Wojcik does not contend that the court should evaluate his TCHRA-based claim under a mixed-motives theory.  He relies instead on the same evidence and arguments to contend that Costco's proffered legitimate, nondiscriminatory reasons are pretextual.  His failure to specifically address mixed motives, however, is not dispositive.  In *Quantum Chemical Corp. v. Toennies* the Supreme Court of Texas held that the "motivating factor" causation standard applies to all claims brought under the TCHRA—those based on pretext and mixed-motives theories alike.  *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479-80 (Tex. 2001).  The court will therefore analyze his TCHRA-based claim under a mixed-motives theory of liability.

[17]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

harbored—indeed expressed—a discriminatory animus toward "old people."[18] A reasonable jury could find that Evans was motivated at least in part to exert influence over Webb, the titular decisionmaker, to terminate Wojcik's employment because of Wojcik's age. And because mixed-motives is an alternative to the pretext theory, and is more lenient than the ADEA's "but for" standard, the fact that Wojcik's ADEA claim is being dismissed does not preclude him from going to trial on his TCHRA claim.

Accordingly, the court denies Costco's motion for summary judgment on Wojcik's TCHRA claim.[19]

## VI

The court now turns to Wojcik's FMLA retaliation claim under 29 U.S.C. § 2615(a)(2).

## A

Because Wojcik relies on circumstantial evidence, his FMLA claim is properly analyzed under the *McDonnell Douglas* burden shifting framework. *See, e.g., Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) ("The Fifth Circuit applies

---

[18]As discussed above, according to Wojcik's evidence, Evans refused to hire older employees for the Meat Department, once commenting that a 55-year-old applicant was "a little old for what we need," D. App. 32, and commenting on another occasion that a 50-year-old applicant was too old, that Evans did not need any more old people, that she had enough old people already, and that "I only have so many door positions available for you old people," *id.* at 31, 38.

[19]At trial, Wojcik will be confined to a mixed-motives theory because this is the basis on which he has defeated summary judgment.

the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA.").

> To establish a prima facie case for . . . retaliation under the
> FMLA, a plaintiff must demonstrate that [he] is protected under
> the FMLA; [he] suffered an adverse employment decision; and
> that [he] was treated less favorably than an employee who had
> not requested leave under the FMLA or that the adverse decision
> was made because of [his] request for leave.

*Comeaux-Bisor v. YMCA of Greater Hous.*, 290 Fed. Appx. 722, 724-25 (5th Cir. 2008) (per

curiam) (citing *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 384 (5th Cir. 1998)).

"[O]nce an employee has established a prima facie case of retaliation, the burden shifts to the

employer to articulate a legitimate, nondiscriminatory reason for the adverse employment

action." *Stroud v. BMC Software, Inc.*, 2008 WL 2325639, at *3 (5th Cir. June 6, 2008)

(FMLA case) (per curiam) (unpublished opinion).

> In cases involving a potential mixed motive for the adverse
> employment action, to survive summary judgment the employee
> must "offer sufficient evidence to create a genuine issue of fact
> either that (a) the employer's proffered reason is a pretext for
> discrimination, or . . . (b) that the employer's reason, although
> true, is but one of the reasons for its conduct, another of which
> was discrimination."

*Id.* (quoting *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005)).[20]

---

[20]The Fifth Circuit has not yet addressed whether the Supreme Court's reasoning in *University of Texas Southwestern Medical Center v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2528-33 (2013), in which the Court determined that the "but for" causation standard applies to retaliation claims under Title VII, also applies to the FMLA.  Because the FMLA retaliation provision does not contain the same "because of" language that the Court interpreted in Title VII to require but-for causation, and because the Fifth Circuit has not indicated that *Richardson* is no longer controlling, the court will assume that a plaintiff bringing an FMLA retaliation claim can still proceed under the mixed-motives alternative. *See, e.g., Mathis v. BDO USA, LLP*, 2014 WL 975706, at *6 (S.D. Tex. Mar. 12, 2014)

Assuming *arguendo* that Wojcik can establish a prima facie case of retaliation, the court holds that Wojcik has failed to create a genuine issue of material fact either that Costco's proffered reason for Wojcik's termination—the violation of Costco's Manager's Standard of Ethics and the falsification of company records— is a pretext for retaliation, or that Costco's reason, although true, is but one of the reasons for its conduct, another of which was FMLA retaliation.

Wojcik bases his retaliation claim on the following: he was terminated within days of returning from FMLA leave, and Costco made its decision to terminate him while he was still on FMLA leave.  Wojcik also contends that "the same evidence of pretext previously discussed in connection with the age claims, is equally relevant to show pretext as to the retaliation claim." P. Br. 28.

Although "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment," *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999), Costco has produced evidence that explains the timing of its termination decision, and Wojcik has not adduced other significant evidence of pretext with regard to his FMLA retaliation claim.  The evidence shows that Wojcik filled out the SSOP log on January 28, 2012 and that Evans first called him in and questioned him on February 4, 2012.  The following week, Evans was out on vacation and Wojcik requested

---

(stating that, "until a higher court says otherwise, the Supreme Court's decision in [*Nassar*] to require but-for causation in Title VII cases does not alter our calculus for FMLA cases.").

and was granted FMLA leave beginning on February 14, 2012. Evans continued her investigation and reported her findings to Silva and Webb while Wojcik was out, and, when he returned, Costco suspended him pending his termination. Wojcik has not introduced other significant evidence of pretext evidence that, in combination with the allegedly suspicious timing, would enable a reasonable jury to find that Costco terminated his employment in retaliation for exercising his rights under the FMLA. Accordingly, the court grants Costco's motion for summary judgment on Wojcik's FMLA claim.

*   *   *

For the foregoing reasons, Costco's motion for summary judgment is granted as to Wojcik's ADEA and FMLA claims and denied as to his TCHRA-based age discrimination claim.

**SO ORDERED**.

April 2, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE